UNITED STATES BANKRUPTCY COURT:
SOUTHERN DISTRICT OF NEW YORK

In Re:

    STEPHEN E. KING,

                      Debtor.

CHAPTER 11

CASE NO.: 02-37616 (CGM)

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF UPPER VALLEY COMMERCIAL CORPORATION'S MOTION IN LIMINE**

Pursuant to U.S. Bankruptcy Court, Southern District of New York, Local Rule 9013-1(b) and at the request of the Court, Upper Valley Commercial Corporation ("Upper Valley"), by its attorneys, VAN DeWATER & VAN DeWATER, LLP, hereby submits this Supplemental Memorandum of Law in further support of its Motion In Limine.

FACTS

The Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code on or about November 1, 2002 (the "Filing Date") in the U.S. Bankruptcy Court for the Southern District of New York. Upper Valley holds a claim against STK Petroleum Products, Inc., ("STK") in excess of Two Million ($2,000,000.00) Dollars, personally guaranteed by the Debtor and secured by a collateral mortgage on his residence located at Milan Hill Road, Town of Milan, County of Dutchess, New York and more particularly described in the mortgage (the "Premises") in the amount of One Hundred Thousand and 00/100 Dollars ($100,000.00) as of the Filing Date.

STK defaulted under the terms of the Notes and the Corporate Security Agreements and

Upper Valley exercised its rights to accelerate all obligations and indebtedness of STK to Upper Valley. STK remains in default and Upper Valley made a motion for relief from the automatic stay in order pursue its state court remedies and foreclose on the Premises.

An examination before trial of the Debtor was conducted on May 19, 2003 at which time certain information was requested. The Debtor not having or knowing such information at the time was directed to provide such information by completing blanks left in the transcript upon his receipt and review of the same. (See Exhibit B annexed to Motion In Limine, King Transcript.) An original transcript was provided to the Debtor's counsel on May 20, 2003. Despite follow-up with the Debtor's attorney by telephone on or about June 9, 2003, by fax on July 8, 2003 and again by fax on August 12, 2003, the Debtor failed to return the executed original transcript to Movant's counsel, and only did so finally after being *ordered* to do so by this Court (pursuant to Order on Upper Valley's Motion In Limine, dated August 20, 2003). The Debtor has altogether failed to provide the missing information requested in the transcript, notwithstanding the Court's Order to do so.

On June 9, 2003, the parties agreed to further adjourn the evidentiary hearing to August 28, 2003, previously scheduled for June 12, 2003. The parties also agreed to have appraisals of STK Petroleum's assets completed and exchange the appraisal reports by July 14, 2003. The parties further agreed to complete any further discovery, including depositions of expert witnesses, and/or file motions in limine relating to the appraisals by August 11, 2003.

The parties agreed to have STK Petroleum and its assets appraised because the Debtor challenged the amount of the balance of Upper Valley's mortgage and contended that a valuation of the business and its assets was necessary to resolve such balance issue. This agreement was confirmed by

letter to the Bankruptcy Court, dated June 9, 2003, and transmitted electronically.

On July 14, 2003, after Upper Valley spent considerable time, energy and expense to have appraisals completed in time for the agreed-upon due date, Upper Valley's appraisers' business valuation as of October 9, 2003, business valuation as of May 31, 2003, machinery and equipment appraisal and real property appraisal were hand-delivered to Debtor's counsel.

On July 22, 2003, still waiting for the Debtor's appraisal reports, follow-up correspondence was sent to the Debtor's counsel regarding the same. To date, the Debtor has failed to get his own such appraisals and has failed to object to Upper Valley's appraisals. Following my letter to Debtor's counsel dated July 22, 2003, Debtor's counsel advised me that the Debtor was not planning on getting his own appraisals.

On August 20, 2003, following a hearing held on August 19, 2003, this Court entered an Order which provided in pertinent part:

"ORDERED, that, within 48 hours of the hearing held on August 19, 2003, the Debtor shall cure his failure to provide to Upper Valley's counsel an original executed transcript of his examination before trial and all the previously requested information listed on the annexed Schedule A; the Debtor's failure to so cure shall result in preclusion of the Debtor's introduction of any evidence relating to the requested information listed on the annexed Schedule A, and it is further

ORDERED, that this Court reserves decision on Upper Valley's request for a judgment against the Debtor awarding Upper Valley its reasonable expenses, including attorney's fees, caused by the Debtor's failure to provide to Upper Valley's counsel an original executed transcript of his examination before trial and all the previously requested information listed on the annexed Schedule A, and it is

further

ORDERED, that, within 48 hours of the hearing held on August 19, 2003, the Debtor shall cure his failure to provide to Upper Valley's counsel all documentation relating to any modification of Thomas R. King's mortgage; the Debtor's failure to so cure shall result in preclusion of the Debtor's introduction of any evidence relating to any modification of Thomas R. King's mortgage, and it is further

ORDERED, that Upper Valley's request for a judgment against the Debtor awarding Upper Valley its reasonable expenses, including attorney's fees, caused by the Debtor's failure to provide to Upper Valley's counsel all documentation relating to any modification of Thomas R. King's mortgage is denied, and it is further

ORDERED, that upon stipulation of the parties, the Debtor is precluded from introducing any appraisal or valuation report of STK Petroleum and its assets, and it is further

ORDERED, that this Court reserves decision on Upper Valley's request for a judgment against the Debtor awarding Upper Valley its reasonable expenses, including attorney's fees and appraisal expenses, caused by the Debtor's failure to provide to Upper Valley his own formal appraisals following the parties agreement of June 9, 2003 to exchange appraisal reports by July 14, 2003, and it is further

ORDERED, that Upper Valley's appraisals of STK Petroleum and its assets are admitted into evidence; the appraisers who prepared the same shall appear at the evidentiary hearing as qualified experts; the Debtor's cross-examination of such expert witnesses shall be limited to their appraisal reports only; the Debtor shall not cross-examine such expert witnesses with respect to their qualifications and curriculum vitae, and it is further

ORDERED, that this Court reserves decision on Upper Valley's request for a determination of the legal issue of whether the doctrine of marshalling assets is applicable to this case, against the Debtor and in Upper Valley's favor, or alternatively, for a determination that such issue is irrelevant, as a sanction for the Debtor's failure to provide to Upper Valley his own formal appraisals following the parties agreement of June 9, 2003 to exchange appraisal reports by July 14, 2003, and it is further

ORDERED, that this Court reserves decision on Upper Valley's request for a determination of the factual issue of whether STK Petroleum turned over its corporate assets to Upper Valley in October 2002, against the Debtor and in Upper Valley's favor, or alternatively, deeming such issue irrelevant, as a sanction for the Debtor's failure to provide to Upper Valley his own formal appraisals following the parties agreement of June 9, 2003 to exchange appraisal reports by July 14, 2003, and it is further

ORDERED, that upon the stipulation of the parties, the Debtor is precluded from introducing the letter dated January 29, 2001, purporting to be written by Zavatsky, Mendelsohn, Gross, Savino & Levy LLP and addressed to Upper Valley, and it is further

ORDERED, that the parties shall provide to the Court legal briefs relating to the open issues remaining in the Motion In Limine, joint pretrial stipulations, pretrial memoranda of law, copies of exhibits and lists of witnesses, and shall exchange the same, pursuant to a schedule which shall be determined by the Court via telephone conference call with both parties' attorneys and the Court's Law Clerk on August 21, 2003 at 10:00 a.m."

The Debtor failed to provide to Upper Valley's counsel all the previously requested information listed in the transcript of his examination before trial within 48 hours of the hearing held on August 19,

2003. As a result, on September 11, 2003, this Court entered an Order precluding the Debtor from introducing any evidence relating to such information.

ARGUMENT

**POINT I: UPPER VALLEY SHOULD BE AWARDED ITS REASONABLE EXPENSES, INCLUDING ATTORNEY'S FEES, CAUSED BY DEBTOR'S FAILURE TO PROVIDE ORIGINAL EXECUTED EBT TRANSCRIPT & ALL INFORMATION PREVIOUSLY REQUESTED THEREIN**

Rule 26(e)(1) of the Federal Rules of Civil Procedure, made applicable pursuant to Rule 7026 of the Federal Rules of Bankruptcy Procedure, provides in pertinent part:

> "A party is under a duty to supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

Rule 37(c)(1) of the Federal Rules of Civil Procedure, made applicable pursuant to Rule 7037 of the Federal Rules of Bankruptcy Procedure, provides in pertinent part:

> "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in

lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of *reasonable expenses, including attorney's fees*, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) ..."

(Emphasis added.)

It is well-established that monetary sanctions, including attorneys fees, are warranted for discovery violations. <u>Arthur v. Atkinson Freight Lines Corp.</u>, 33 Fed. R. Serv. 3d (Callaghan) 74 (S.D.N.Y. 1995)(imposing monetary sanctions for failure to supplement disclosure); <u>In re. Chadborne Industries, Ltd.</u>, 71 B.R. 86 (Bankr. S.D.N.Y. 1987)(awarding attorneys fees for discovery violations).

On May 19, 2003, Movant's counsel conducted an examination before trial of the Debtor at the office of Van DeWater & Van DeWater, LLP. During this examination before trial, Movant's counsel requested certain information from the Debtor. No objections to such request were made. The Debtor, not knowing or having such information at the time, indicated that he would provide such information by completing twelve (12) blanks that were left in the transcript for this purpose upon his receipt and review of the same. Accordingly, there is no question that the Debtor knew that his deposition testimony was incomplete.

On May 20, 2003, Movant's counsel sent the original transcript of the Debtor's examination before trial to his attorney and requested return of the executed original and missing information. Despite follow-up with the Debtor's attorney by telephone on or about June 9, 2003, by fax on July 8, 2003 and again by fax on August 12, 2003, the Debtor failed to return the executed original transcript

to Movant's counsel. Only *after* this Court *ordered* the Debtor to provide his executed original transcript to Upper Valley's attorney based on Upper Valley's Motion In Limine brought by order to show cause dated August 18, 2003, did the Debtor return his original executed transcript. Furthermore, even after this Court *ordered* the Debtor to also provide the information previously requested at his deposition, the Debtor failed to do so. Such failure resulted in this Court's precluding the Debtor's introduction of any evidence relating to such information previously requested and not provided, by Order dated September 11, 2003.

Accordingly, based on the Debtor's violation of FRCP Rule 26(e)(1) by failing to supplement, complete and return his deposition transcript, Upper Valley should be granted a judgment against the Debtor in amount equal to the reasonable expenses caused by such failure, including its attorney's fees relating to its motion in limine.

### POINT II: DEBTOR SHOULD BE SANCTIONED FOR FAILURE TO PROVIDE AN APPRAISAL OR VALUATION OF STK PETROLEUM AND ITS ASSETS

Rule 37(b)(2) of the Federal Rules of Civil Procedure, made applicable pursuant to Rule 7037 of the Federal Rules of Bankruptcy Procedure, provides in pertinent part:

> "If a party ... fails to obey an order to provide or permit discovery, ... or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
> (A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

...

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust."

## A. ATTORNEYS FEES & APPRAISERS FEES

As discussed above, it is well-established that monetary sanctions, including attorneys fees and experts fees, are warranted for discovery violations. Arthur v. Atkinson Freight Lines Corp., 33 Fed. R. Serv. 3d (Callaghan) 74 (S.D.N.Y. 1995)(reimbursement of $2,500 bill for expert's lost time was awarded for disclosure violation); In re. Chadborne Industries, Ltd., 71 B.R. 86 (Bankr. S.D.N.Y. 1987)(awarding $2,500.00 for attorneys fees incurred as a result of discovery violations).

On June 9, 2003, the parties agreed via telephone conference call with Gary Von Stange, Esq., the Bankruptcy Court's Law Clerk, to adjourn the evidentiary hearing to August 28, 2003 and also specifically agreed that they would each have appraisals of STK Petroleum's assets completed and would exchange the appraisal reports by July 14, 2003. The parties agreed to have STK Petroleum and its assets appraised because the Debtor challenged the amount of the balance of Upper Valley's mortgage as part of his objection to claim and contended that a valuation of the business and its assets

was necessary to resolve such balance issue. Upper Valley would not have otherwise incurred the extraordinary expense of getting these appraisals which required the services of three different appraisers, to wit, a business appraiser, a machinery and equipment appraiser and a real estate appraiser. In addition, Upper Valley's principals, as well as its attorneys, spent considerable time coordinating these appraisals and supplying the appraisers with the necessary information.

The Debtor's challenge to the mortgage balance was premised on (1) his argument that as a matter of law Upper Valley had a duty to marshall the assets of STK Petroleum before foreclosing its mortgage on the Debtor's real property and that the value of the corporate assets should be credited against the mortgage balance,[1] (2) his alternative contention that STK Petroleum had already turned over the corporate assets to Upper Valley in October, 2002 and as a result the value of the corporate assets should be credited against the mortgage balance,[2] and (3) his contention that, in any case, his shares of stock in STK Petroleum were transferred to Upper Valley in October, 2002 and as a result the value of said stock should be credited against the mortgage balance.

The parties further agreed during their conference call with Gary Von Stange, Esq. to complete any further discovery, including depositions of expert witnesses, and/or file motions in limine relating to the appraisals by August 11, 2003. This agreement was confirmed by letter to the Bankruptcy Court, dated June 9, 2003, and transmitted electronically.

On July 8, 2003, Movant's counsel transmitted by facsimile to the Debtor's counsel follow-up correspondence regarding the Debtor's appraisals, as well as the still-missing information from the Debtor's transcript of his examination before trial. Movant's counsel received no response.

On July 14, 2003, after Upper Valley spent considerable time, energy and extraordinary expense to have appraisals completed in time for the agreed-upon due date, Movant's counsel provided to the Debtor's counsel by hand-delivery Upper Valley's appraisers' business valuation as of

---

[1]Movant does not concede that the marshalling of assets doctrine applies. On the contrary, it remains Movant's position that such doctrine is completely inapplicable to this case.

[2]Similarly, Movant does not concede that STK Petroleum turned over the corporate assets to Upper Valley in October, 2002.

October 9, 2003, business valuation as of May 31, 2003, machinery and equipment appraisal and real property appraisal. On July 22, 2003, still waiting for the Debtor's appraisal reports, Movant's counsel wrote follow-up correspondence to the Debtor's counsel regarding the same. (See Exhibit G annexed to Motion In Limine, Conformed copy of letter, dated July 22, 2003.)

To date, the Debtor has failed to get his own such appraisals and has failed to object to Upper Valley's appraisals. Following Upper Valley's counsel's letter to Debtor's counsel dated July 22, 2003, Debtor's counsel advised that the Debtor would not be getting his own appraisals, notwithstanding the parties' specific agreement to do so. Significantly, such agreement was made while on telephone conference call with this Court's Law Clerk, served as the basis for the adjournment of the evidentiary hearing to August 28, 2003, was reduced to writing transmitted to Debtor's counsel and was also transmitted to this Court electronically.

Accordingly, the Debtor has caused the Movant to expend substantial time, energy and money in getting appraisals of the corporate stock, machinery, equipment and real property by July 14, 2003 (the agreed-upon due date and in only five weeks' time) and also delayed the evidentiary hearing by about two and a half months -- all this while, not making a single payment towards the subject mortgage. Therefore, the Debtor should be awarded its reasonable expenses including attorneys' fees and appraisers' fees caused by Debtor's disclosure violation.

### B. DETERMINATION OF LEGAL ISSUES IN UPPER VALLEY'S FAVOR

Furthermore, the legal issue that the Debtor has raised regarding Upper Valley's alleged duty to marshall the assets of STK Petroleum before foreclosing its mortgage on the Debtor's real property should be decided against the Debtor and in Upper Valley's favor, to wit, that no such duty exists. In the alternative, based on Upper Valley's appraisals, the legal issue of marshalling assets should be deemed irrelevant as Upper Valley's business valuations of STK Petroleum indicate that the corporate stock is worth zero ($0) and the appraisal of the corporate assets (machinery and equipment valued at $328,925 as of May 31, 2003; real property valued at $ 215,000 as of May 31, 2003) indicate that such corporate assets are worth significantly less than the outstanding balance of the Corporate Notes

11

(approximately $3,543,419.96$ as of May 15, 2003) which are secured by Upper Valley's Mortgage. Therefore, *even if* Upper Valley had a duty to first marshall the assets of STK Petroleum before foreclosing its mortgage, which Upper Valley does not concede, such corporate assets would not satisfy the debt owed to Upper Valley because a balance of approximately $2,999,495 would still remain outstanding -- a balance well over Upper Valley's mortgage which is capped at $100,000.

## C. DETERMINATION OF FACTUAL ISSUES IN UPPER VALLEY'S FAVOR

Moreover, the factual issue that the Debtor has raised regarding STK Petroleum's alleged turnover of corporate assets to Upper Valley in October, 2002, should also be decided against the Debtor and in Upper Valley's favor, to wit, that no such turnover occurred. In the alternative, based on Upper Valley's appraisals, the factual issue regarding turnover, should *also* be deemed irrelevant for the same reason stated above. Upper Valley's business valuations of STK Petroleum indicate that the corporate stock is worth zero ($0) and the appraisal of the corporate assets (machinery and equipment valued at $323,850 as of October 9, 2002; real property valued at $ 215,000 as of October 9, 2002) indicate that such corporate assets are worth significantly less than the outstanding balance of the Corporate Notes (approximately $3,145,830.78 as July 19, 2002, plus interest to October 9, 2002) which are secured by Upper Valley's Mortgage. Therefore, *even if* STK Petroleum did turn over all the corporate assets to Upper Valley in October, 2002, which Upper Valley does not concede, such corporate assets would not have satisfied the debt owed to Upper Valley because a balance of approximately $2,606,981 would still remain outstanding -- a balance well over Upper Valley's mortgage which is capped at $100,000. Accordingly, the Debtor should be precluded from producing evidence relating to such issue at the evidentiary hearing.

## CONCLUSION

Therefore, Upper Valley is entitled to an Order granting Upper Valley a judgment against the Debtor in the amount of its reasonable expenses, including attorneys' fees and experts' fees, caused by Debtor's disclosure violations, and determining certain legal and factual issues in Upper Valley's favor as sanctions for said disclosure violations.

Dated: Poughkeepsie, New York
September 18, 2003

                      VAN DeWATER & VAN DeWATER, LLP

        By:    /s/ Cynthia S. Rosenzweig
                      CYNTHIA S. ROSENZWEIG (CR 9291)
                      Attorneys for Upper Valley Commercial Corporation
                      40 Garden Street, P.O. Box 112
                      Poughkeepsie, New York 12602
                      Tel. (845) 452-5900